# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 139

State of North Dakota,                                   Plaintiff and Appellee

v.

Jarrod Jashawn Adams,                              Defendant and Appellant

## No. 20230328

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable M. Jason McCarthy, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Chief Justice.

Rachel R. Egstad, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]    Jarrod Adams appeals from a criminal judgment entered after a jury found him guilty of attempted gross sexual imposition, kidnapping, terrorizing, interference with a telephone call during an emergency, and simple assault. On appeal, Adams challenges the convictions related to the attempted gross sexual imposition and kidnapping charges, asserting the inconsistencies in the charges and jury instructions were obvious error; the district court erred in removing the culpability level of "intentional" from the elements of attempted gross sexual imposition; the court misstated the law in the jury instructions, improperly allowed for a verdict without a unanimous jury finding on all elements of kidnappings, and erred by finding sufficient evidence existed to convict Adams of kidnapping. We affirm the judgment with the exception of the sentence imposed for the kidnapping conviction, and reverse and remand for resentencing on the kidnapping conviction for imposition of a sentence consistent with the facts proven.

I

[¶2]    Adams was charged with attempted gross sexual imposition. The information used both "intentional" and "willful" in describing the culpability required for the offense. The jury instructions defined attempted gross sexual imposition as follows:

> A person who intentionally attempts to engage in a sexual act with another person by compelling another person to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being, is guilty of Attempted Gross Sexual Imposition.

[¶3]    The jury instruction providing the elements necessary for a conviction for attempted gross sexual imposition read as follows:

1. On or about May 1, 2022, in Grand Forks County, North Dakota,
2. the Defendant, Jarrod Jashawn Adams, attempted to engage in a sexual act with [Jane Doe] by compelling her to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on [Jane Doe], a human being;
3. the Defendant intentionally engaged in conduct which constituted a substantial step towards commission of the crime of Gross Sexual Imposition; and

1

4.     the Defendant intended to commit the crime of Gross Sexual Imposition.

[¶4]   Adams was also charged with kidnapping in violation of section 12.1-18-01, N.D.C.C., which reads as follows:

1.     A person is guilty of kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:
   a.    Hold him for ransom or reward;
   b.    Use him as a shield or hostage;
   c.    Hold him in a condition of involuntary servitude;
   d.    Terrorize him or a third person;
   e.    Commit a felony or attempt to commit a felony; or
   f.    Interfere with the performance of any governmental or political function.
2.     Kidnapping is a class A felony unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a class B felony.

[¶5]   Adams requested the following jury instruction for the kidnapping charge:

A person who abducts another or, having abducted another, continues to restrain the other person with intent to terrorize the victim or a third person or commit a felony or attempt to commit a felony is guilty of Kidnapping.

[¶6]   Adams also requested the jury instructions include the following essential elements for the kidnapping charge:

1. On or about May 1, 2022, in Grand Forks County, North Dakota, the Defendant, Jarrod Adams, abducted [Jane Doe], and
2. The Defendant did so intending to terrorize [Jane Doe] or commit a felony or attempt to commit a felony.

[¶7]   The jury was instructed on the kidnapping charge as requested by Adams. The jury found Adams guilty of attempted gross sexual imposition and kidnapping. This appeal followed.

II

[¶8]   Adams argues the manner in which he was charged with attempted gross sexual imposition resulted in inconsistent instructions to the jury and the charging of a non-cognizable offense. Adams concedes he failed to preserve this issue at trial but argues the

2

asserted errors were obvious error requiring reversal. To establish obvious error, a defendant must show: (1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights. *State v. Pemberton,* 2019 ND 157, ¶ 9, 930 N.W.2d 125.

[¶9] Our decision in *State v. Pendleton,* 2022 ND 149, 978 N.W.2d 641, forecloses the argument put forth by Adams with regard to the inconsistencies in the jury instructions and information. In *Pendleton,* the defendant argued he was charged with a non-cognizable offense, attempted knowing murder. 2022 ND 149, ¶ 15. In *Pendleton* we noted the following:

> The information used both the "intentionally" and "knowingly" culpability terms in the attempted murder charges. The opening jury instructions also used the "knowingly" term. However, the instructions were then amended for the closing charge to the jury. The amended instructions given to the jury for deliberations on the attempted murder counts stated the following:
>
> > The State's burden of proof is satisfied if the evidence shows beyond a reasonable doubt, the following essential elements:
> > 1. On or about May 27, 2020, in Grand Forks, North Dakota;
> > 2. The defendant, Salamah Qareed Pendleton;
> > 3. Intentionally;
> > 4. Engaged in the conduct which constitutes a substantial step toward commission of the crime of murder;
> > 5. Specifically, the defendant attempted to kill [victim's name]; and
> > 6. The Defendant did not act in self-defense.
>
> The instructions included a warning that these instructions modified and superseded the prior opening instructions.

*Id.* at ¶ 17.

[¶10] This Court concluded the jury instructions informed the jury of the level of proper culpability necessary to convict Pendleton on the attempted murder charges. *Pendleton,* 2022 ND 149, ¶ 18.

> [T]he "intentionally" language in element three directly modifies element four, describing the charged conduct. The use of the word "specifically" in element five explains that element five is a further articulation or refinement of element four. Therefore, when reading the jury instructions as a whole, we conclude the instructions fairly advised the jury that they could convict Pendleton on nothing less than intentional attempted murder. Further,

3

although the opening instructions stated the word "knowingly," the final instructions clearly provided that the instructions replaced and superseded the opening instructions. Thus, we affirm the attempted murder convictions.

*Id.*

[¶11] As in *Pendleton,* the information charging Adams included both knowingly and intentional in describing the culpability. Similar to *Pendleton,* the court eliminated the inconsistency, and in the final jury instruction each essential element identified intentionally as the level of culpability. Consistent with our decision in *Pendleton,* we conclude the jury was properly instructed that it could convict Adams on nothing less than intentional conduct.

III

[¶12] Adams argues the jury instructions for the kidnapping charge provided by the district court were "misleading, confusing and did not adequately inform the jury of the law."

[¶13] First, Adams argues that because the different subsections under kidnapping are different crimes, it was plain error to include subsection (e) in the essential elements without charging subsection (e) in the information. Adams submitted proposed jury instructions, and the district court gave the instructions Adams requested on the kidnapping charge. Adams did not object to the instruction on kidnapping or request any additional instruction at trial. Adams' proposed jury instructions included the language he now objects to on appeal. By submitting the jury instructions, Adams invited the error that he now appeals. An allegation of error is waived when the error is invited. *State v. Rende,* 2018 ND 56, ¶ 9, 907 N.W.2d 361. We conclude Adams invited the error he now alleges in the jury instructions and waived his right to review the error on direct appeal.

[¶14] Second, Adams argues the verdict for kidnapping was not unanimous, arguing that the different subsections in the kidnapping statute are not different means of committing kidnapping, but distinct and separate crimes. This Court has not previously determined whether the subsections in the kidnapping statute are alternative means of committing kidnapping, not separate offenses. However, our interpretations of similar structures in other statutes guide us to the conclusion they are alternative means, not separate offenses.

[¶15] In *State v. Gardner,* we concluded that the North Dakota Legislature created two alternative means of committing child abuse, not separate crimes. 2023 ND 116, ¶ 18, 992

4

N.W.2d 535. This conclusion was based on the language of the statute and the legislative history of N.D.C.C. § 14-09-22. *Id*. This Court noted that the jury was not required to unanimously agree on which of the two alternative means of committing child abuse was proven beyond a reasonable doubt, emphasizing that the behaviors were alternative, nonexclusive means of committing the same offense. *Id*. Similarly, in *City of Mandan v. Sperle*, we reiterated the idea that legislatures often list alternative means of committing a crime without intending to define separate elements or separate crimes. 2004 ND 114, ¶ 14, 680 N.W.2d 275. Finally, in *State v. Motsko*, we clarified that kidnapping and aggravated assault are not included offenses in each other, as "each requires proof of elements not necessary to be proved to establish the other." 261 N.W.2d 860, 868 (N.D. 1977).

[¶16] The subsections in the kidnapping statute are alternative means of committing kidnapping and are not separate offenses. Therefore, we conclude the jury instructions and verdict form did not violate the requirement for the jury to reach a unanimous verdict.

IV

[¶17] Adams argues that because he was charged with kidnapping as a class A felony, but the circumstances of this case provide only for imposition of a sentence as a class B felony, the evidence was insufficient to support the kidnapping conviction, and therefore the conviction must be vacated. The State, relying on *State v. Igou*, 2005 ND 16, ¶ 16, 691 N.W.2d 213, argues the appropriate remedy is to reverse and remand for imposition of a new sentence.

[¶18] In *Igou*, the defendant was convicted and sentenced for a class C felony, when the charge itself, and the facts supporting the charge, clearly made the offense a class A misdemeanor. 2005 ND 16, ¶ 16. Noting that the jury in *Igou* had been correctly instructed and the verdict could not have been prejudicially impacted by the error, this Court applied its discretion to rectify the unfairness of the proceeding under the obvious error standard. *Id*. at ¶¶ 15-16. The rationale in *Igou* allows this Court to conclude there is obvious error when the jury is properly instructed and the grading of the offense in sentencing does not match the charge or the instructions.

[¶19] However, this case is distinguishable from *Igou*. Adams concedes the alleged element was not included in the jury instructions. Adams brought no motion alleging it was the State's burden to prove what Adams now claims is an essential element. Here, unlike *Igou*, we have not decided whether the jury instructions correctly advised the jury because

any possible error was waived by Adams as an invited error. Given the facts of this case, it is not appropriate to rely on the rationale in *Igou* to correct Adams's sentence.

[¶20] Adams argues on appeal that the evidence was insufficient to convict because the State had an obligation to prove beyond a reasonable doubt that he did not voluntarily release Jane Doe alive and in a safe place prior to trial. In *State v. Motsko*, the defendant made an argument on appeal similar to Adams's argument—that the district court erred in failing to instruct the jury to determine whether the kidnapping was a class A or class B felony under N.D.C.C. § 12.1-18-01, depending on whether the actor voluntarily released the victim alive and in a safe place. 261 N.W.2d at 867. This Court did not decide the issue because it was waived by the defendant. *Id.* Likewise, in *State v. Brown*, the defendant argued on appeal that the trial court erred in refusing to instruct the jury that a class A felony kidnapping charge must include as an essential element "that the actor did not voluntarily release the victim alive and in a safe place prior to trial." 337 N.W.2d 138, 153 (N.D. 1983) (noting trial court presented the issue to the jury in the form of an interrogatory rather than as an essential element). Again, the issue was not addressed because the defendant was not convicted of kidnapping, so the issue was moot. *Id*.

[¶21] Generally, the State must prove the elements of the offense charged and "the prosecution can be expected to endeavor to prove the elements of the highest offense; it will attempt to disprove the mitigating circumstance. Because only the defendant will gain by establishing the mitigating circumstance, he alone will be concerned with showing its existence." *State v. Sorenson*, 2009 ND 147, ¶ 29, 770 N.W.2d 701 (cleaned up). Whether showing the victim was released in a safe place is an element to be proven by the State, or possibly an affirmative defense or mitigating factor for the defendant to prove, has yet to be determined and we need not determine it here.

[¶22] Adams was charged in count II of the amended information with kidnapping, a class A felony, alleging as follows:

> That on or about the 1st day of May, 2022, . . . one Jarrod Jashawn Adams did commit the crime of KIDNAPPING, in violation of Sections 12.1-18-01(1)(d), 12.1-18-01(2) and 12.1-32-01(2) of the North Dakota Century Code, a Class A Felony, by then and there willfully abducting another or, having abducted another, continued to restrain the victim with intent to terrorize the victim or a third person; to-wit: The defendant, Jarrod Jashawn Adams, willfully abducted [Jane Doe], and continued to restrain the victim with intent to commit a felony or attempt to commit a felony.

[¶23]   Adams requested, and was granted, jury instructions on kidnapping, which did not include a requirement for the State to prove the victim was not voluntarily released. In addition to requesting the jury instructions, when presented with the proposed final jury instructions, Adams was asked by the district court whether he had any objections to the proposed instructions, and his answer was, "No, Your Honor."

[¶24]   "Unchallenged jury instructions become the law of the case." *State v. Rogers*, 2007 ND 68, ¶ 10, 730 N.W.2d 859 (quoting *State v. Wolff*, 512 N.W.2d 670, 675 (N.D. 1994) (Levine, J., specially concurring)). The jury instructions on kidnapping, as requested and agreed to by Adams, became the law of the case, and that was all the State was required to prove as essential elements. Rather than stating the conduct is the same under either a class A or class B felony and concluding the jury instructions correctly advised the jury, we conclude the issue presented by Adams—of whether release of the victim is an element of the offense—need not be answered; instead, under the law of the case on the jury instructions he requested, he was properly convicted because there was sufficient evidence to meet the elements as instructed, and the issue was waived.

[¶25]   As to the argument made by Adams that the evidence was insufficient to convict him of class A felony kidnapping, he forfeited this argument by not arguing it in his motion for acquittal under N.D.R.Crim.P. 29. In his motion for acquittal, Adams argued that the kidnapping charge was not supported by sufficient evidence because the State failed to prove the victim was abducted and, therefore, the facts only proved the lesser included offense of felonious restraint. No argument was made that the evidence was insufficient to prove kidnapping on the basis that the victim was released in a safe place. If a motion for judgment of acquittal was made at trial on specified grounds and those grounds did not include the claim on appeal, the defendant does not preserve that issue for review. *See State v. Spillum*, 2021 ND 25, ¶ 9, 954 N.W.2d 673. However, it does not foreclose the exercise of our discretion to review forfeited errors under the obvious error standard as provided by N.D.R.Crim.P. 52(b). *State v. Dahl*, 2022 ND 212, ¶ 11, 982 N.W.2d 580. In *State v. Haverluk*, this Court applied Rule 52(b) to correct an obvious error when the alleged error elevated the offense from a class B misdemeanor to a class A misdemeanor even though it was not brought to the attention of the trial court. 432 N.W.2d 871, 874-75 (N.D. 1988). Similarly, here, Adams was convicted and sentenced for class A felony kidnapping when the facts as conceded by the State only supported a conviction for class B felony kidnapping.

[¶26]   Under the facts and circumstances of this case, the sentence in this case must be limited to the range for a class B felony rather than a class A felony. As in *Haverluk*, we have the discretion to correct this obvious error, and we should correct it because it seriously affects the fairness, integrity, or public reputation of the judicial proceeding. 432 N.W.2d at 874-75; *see State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765.

[¶27]   Therefore, we reverse and remand this case for imposition of a sentence consistent with the facts proven.

V

[¶28]   We conclude the jury instructions informed the jury of the level of culpability necessary to convict Adams of attempted gross sexual imposition; Adams invited the error he alleges in the jury instructions related to the kidnapping charge; and the jury instructions did not violate the requirement for the jury to reach a unanimous finding on all elements of kidnapping. We further conclude that sufficient evidence was presented to the jury to convict Adams of kidnapping, but that he was improperly sentenced on the kidnapping charge. We affirm the judgment of conviction except for the sentence imposed for the kidnapping conviction and reverse and remand for resentencing consistent with the facts proven.

[¶29]   Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr